# EXHIBIT A

FILED
Athens County,Ohio
11/25/2025 03:00 PM
Candy Russell Clerk
CaseNumber:25CI0367
Judge:MCCARTHY, GEORGE P

**IN THE STATE OF OHIO
COURT OF COMMON PLEAS
ATHENS COUNTY**

| | | |
|---|---|---|
| ERIC CONSTANT, | : | |
| 5784 Sandbar St., Apt. 102 | : | |
| West Valley City, Utah 84128, | : | |
| | : | Civil Action No. |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DR. ANDREW C. WEEMS, | : | Judge |
| 340 W. State St. | : | |
| Athens, Ohio 45701, | : | |
| | : | |
| and | : | |
| | : | |
| RESILIENT MEDICAL CORP., *dba* | : | **Jury Demand Endorsed Hereon** |
| THE WEEMS LAB, c/o DR. ANDREW C. | : | |
| WEEMS, Registered Agent, | : | |
| 340 W. State St. | : | |
| Athens, Ohio 45701, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

**I.**    **Preliminary Statement**

1.    This action seeks economic and compensatory damages; declaratory, injunctive, and equitable relief; prejudgment and post-judgment interest; and attorneys' fees and costs for the violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.,* the Rehabilitation Act, 29 U.S.C. § 504, and the Ohio Laws Against Discrimination ("OLAD"), R.C. Chapter 4112, committed when Defendants discriminated and retaliated against Plaintiff in terminating his employment because of his disability, need for reasonable accommodation, and/or engagement in protected activity; denying him equal access to educational programs, services, and employment as a recipient of federal funding because of his disability, need for reasonable

1

accommodation, and/or engagement in protected activity; and by failing – despite the absence of undue hardship – to, as Plaintiff repeatedly requested, meaningfully discuss or provide effective reasonable accommodation for his disability and when, in his individual capacity, Defendant Weems engaged in violations of R.C. 4112.02(J) in aiding, abetting, inciting, compelling, and/or coercing others to engage in unlawful discriminatory practices (as defined by R.C. 4112); preventing and/or obstructing compliance with R.C. 4112; and/or committing unlawful discriminatory practices.

## II.  <u>Jurisdiction and Venue</u>

2.      This Complaint brings discrimination, failure to accommodate, and retaliation claims under OLAD, pursuant to R.C. 4112.99, the ADA, 42 U.S.C. § 12112(a), and the Rehabilitation Act, 29 U.S.C. § 504, pursuant to a Notice of Right to Sue, dated September 3, 2025, from the Equal Employment Opportunity Commission ("EEOC"), received by Plaintiff Constant less than 90 days ago.

3.      This Court has jurisdiction by virtue of R.C. 2305.01.

5.      Declaratory, equitable, and injunctive relief is sought pursuant to R.C. 2721; 28 U.S.C. §§ 2201; 2202, the ADA, the Rehabilitation Act, and OLAD.

6.      Economic and compensatory damages may be awarded under the Rehabilitation Act, OLAD, and the common law of the State of Ohio.

7.      Costs and attorneys' fees may be awarded under the ADA, the Rehabilitation Act, Ohio R. Civ. P. 54, and the common law of the State of Ohio.

## III.  <u>Parties</u>

1.      Plaintiff Eric Constant ("Plaintiff" or "Mr. Constant") is a resident of Utah and a qualified individual with a disability under the Rehabilitation Act and Ohio law. At all times

material to this Complaint, Plaintiff was a post-graduate student enrolled at Ohio University who was jointly employed by recipients of federal financial support for their activities: Defendant and Resilient Medical Corporation (*dba* The Weems Lab), owned and operated by his professor, Dr. Andrew Weems, who was employed by Defendant.

2.      Defendant, Dr. Andrew C. Weems ("Defendant Weems"), is a former professor, who, at all times material to this Complaint, was employed by Ohio University ("OU"), a public university of the State of Ohio that receives federal financial support for its activities, and owned and operated a business, Defendant Resilient Medical Corp., *dba* The Weems Lab, that also receives federal financial support for its activities. At all relevant times, Defendant Weems (who, at the time, served as Mr. Constant's professor and research advisor in his graduate program at OU), through his business, Resilient Medical Corp., *dba* The Weems Lab, jointly employed Plaintiff Constant with OU, which employed fifteen or more employees and/or met this requirement as a joint enterprise intertwined with OU, and had control over the essential terms and conditions of Plaintiff's employment.

3.      Defendant Resilient Medical Corp., *dba* The Weems Lab ("Defendant Resilient Medical"), is a corporation incorporated in the State of Ohio that is owned and operated by Defendant Weems, is a client and/or contractor of Ohio University, is principally engaged in the business of providing education and health care, is located within and conducts business out of Ohio University's campus in its Innovation Center, and is a recipient of federal, state, and other sources of funding for its business and educational activities. At all times material to this Complaint, Defendant Resilient Medical, *dba* The Weems Lab, jointly employed Plaintiff Constant with OU as a Graduate Research Assistant, employed fifteen or more employees and/or

3

met this requirement as a joint enterprise intertwined with OU, and had control of the essential terms and conditions of Plaintiff's employment.

**IV.** **Facts**

4.      From August 27, 2020 until his termination on January 16, 2024, Plaintiff Eric Constant, first as a master's student in Ohio University's Biomedical Engineering program, and, later, in or around Fall 2022, as a graduate student in OU's Translational Biomedical Sciences doctoral program, was jointly employed by Defendant Weems, his Graduate Research Advisor, through Defendant Weems' company, Resilient Medical Corp., *dba* The Weems Lab, and Ohio University as a Graduate Research Assistant.

5.      Defendant Weems also, at one point in time, discussed his desire for Mr. Constant to work for him after graduation, who, in addition to his position as a Graduate Research Assistant, had been working on Defendant Weems' designs for a product to be distributed by Resilient Medical Corp.

6.      While enrolled in his doctoral program, from January to August 2023, Mr. Constant completed an internship with Lawrence Livermore National Lab ("Livermore") in California, for which he conducted research to be used for his dissertation towards his degree at OU.

7.      Defendant Weems, in his capacity as Plaintiff's Graduate Research Advisor, was required to sign off on Mr. Constant's participation in Livermore's internship program to permit Mr. Constant to collaborate with Livermore on his and Defendant Weems' research projects needed for his dissertation, which he did prior to Mr. Constant's start date at Livermore.

8.      In August 2023, Mr. Constant began experiencing unexplained medical symptoms while traveling back to Ohio University from Livermore.

9.      On August 27, 2023, Mr. Constant's medical issues progressed to the point where he required treatment in the hospital.

4

10. On that same date, Mr. Constant advised Defendant Weems of his medical issues and explained that he was currently in the hospital and was expected to remain in the hospital for treatment for at least a few days.

11. Ultimately, Mr. Constant required hospitalization for five days, during which he was diagnosed with multiple sclerosis ("MS"), a disability that substantially limits his major life activities, including, but not limited to, walking, working, standing, concentrating, nerve functioning, and other major activities.

12. Despite his diagnosis, Mr. Constant is a qualified individual with a disability capable of performing the essential functions of his position as a Graduate Research Assistant, with or without reasonable accommodation.

13. Defendant Weems, upon learning of Mr. Constant's diagnosis, asked him to provide documentation about the condition and the medications he was on for him to determine if Mr. Constant was "capable of doing his work."

14. Mr. Constant provided the documentation and further explained to Defendant Weems how his diagnosis was adversely affecting his mental health and ability to engage in major life activities.

15. Defendant Weems then demanded that Mr. Constant schedule a mental health counseling appointment by the end of that day and to send proof that he did so.

16. Defendant Weems became increasingly critical and hostile towards Mr. Constant following his diagnosis, especially with his requests for reasonable accommodation, as his disability caused him to need some time off and extensions of deadlines to meet the essential functions of his position.

17.     For example, on several occasions, Defendant Weems insisted that Mr. Constant needed to "prove" to him that he had the "ability to work" so as not to "waste his money" because he "could have somebody else do the job and contribute to the lab."

18.     Despite Mr. Constant's efforts to discuss accommodations for his disability, at no time did Defendant Weems inform Mr. Constant of any resources offered by OU for individuals with disabilities, such as the Office of Accessibility Services.

19.     In fact, Defendant Weems seemed wholly disinterested in engaging in the interactive process with Mr. Constant to identify and implement reasonable accommodations that would enable him to meet the essential functions of his position.

20.     Mr. Constant's need for reasonable accommodations in no way presented an undue hardship for Defendant Weems and his requested accommodations did not impede the lab's continuous operations.

21.     Throughout September and October 2023, Defendant Weems continuously questioned Mr. Constant's ability to work and often warned him that he could not "blame" his "lack of productivity" on his diagnosis.

22.     On September 19, 2023, Defendant Weems claimed that Mr. Constant's perceived lack of productivity created a "short window" of time for Mr. Constant to finish a presentation for his PhD  proposal to become a PhD candidate in the program, blaming Mr. Constant for the delay due to "the situation he put himself in" – meaning his disability and need for reasonable accommodations.

23.     Mr. Constant, in fact, had not put himself in any "situation" resulting in unreasonable delay; rather, Mr. Constant became disabled and needed to be accommodated

because of that disability in order to perform the essential functions of his position, such as completing projects and presentations.

24.     The next day, on September 20, 2023, Defendant Weems directed Mr. Constant to fix and complete his presentation slides by the following day.

25.     Mr. Constant then worked late into the evening, making his best efforts to meet Defendant Weems' next day deadline.

26.     However, Mr. Constant overexerted himself by working so late and became extremely exhausted, which was exacerbated by his disability.

27.     Because of the combination of extreme exhaustion and his disability, Mr. Constant fell and broke his ankle, resulting in a trip to the emergency room.

28.     This ankle injury added to Mr. Constant's ongoing need for reasonable accommodations.

29.     Without such an accommodation, Mr. Constant could not finish his presentation in a timely manner.

30.     Mr. Constant scheduled a meeting with Defendant Weems and another professor on his PhD committee, Dr. Kevin Lee, the Director of the Translational Biomedical Sciences PhD program, to discuss accommodations for his disability.

31.     Dr. Lee understood Mr. Constant's needs and offered him additional time to complete his presentation; however, Defendant Weems did not show up to the meeting. Dr. Lee assured Mr. Constant that he would speak with Defendant Weems about the matter.

32.     Dr. Lee sent an email alerting the other PhD committee members – including Defendant Weems – that Mr. Constant's presentation was canceled until his health improved.

33.     Defendant Weems then emailed Mr. Constant directly and told him not to talk to anyone about his PhD and accused Mr. Constant of "putting him in a bad place with the committee."

34.     On October 6, 2023, Defendant Weems called Mr. Constant into a meeting and raised his voice at him, expressing his dissatisfaction with Mr. Constant's ability to perform to his standards and Mr. Constant's need for time off due to appointments or other disability-related causes.

35.     In this same meeting, Defendant Weems admonished Mr. Constant for "costing the lab $25,000" because Mr. Constant "decided" to cancel his presentation, stating that Mr. Constant was "not cut out for a PhD."

36.     Defendant Weems continued to berate Mr. Constant, telling him that he did not respect or trust him because Mr. Constant went "over his head" to Dr. Lee to cancel his presentation.

37.     When Mr. Constant tried to give him additional medical records to support his requests for accommodations, Defendant Weems refused to accept the records.

38.     Defendant Weems' repeated denials of Mr. Constant's requests for accommodations, Defendant Weems' habit of ignoring communications from and/or refusing to meet with Mr. Constant, and his disparaging remarks about his disability adversely impacted Mr. Constant's educational opportunities and job performance.

39.     Ultimately, Mr. Constant became aware of OU's Office of Accessibility Services and requested to meet with them about his need for reasonable accommodations.

40.     Through the Office of Accessibility Services, on or around October 10, 2023, Mr. Constant was granted several reasonable accommodations, including additional time for assignments and time off / flexible attendance due to flare-ups of his disability.

41.     During this same time, Defendant Weems continued to treat Mr. Constant poorly because of his disability and need for accommodations and increasingly distanced himself from working with Mr. Constant on any projects or assignments.

42.     In the midst of Mr. Constant's efforts to secure accommodations that Defendant Weems would abide by, Mr. Constant heard from staff at Livermore National Lab (where he formerly worked as an intern) that they had been impressed with his work and invited him to return to Livermore's internship program in January 2024.

43.     Again, as Mr. Constant's Graduate Research Advisor, Defendant Weems had to sign off on Mr. Constant's internship for him to be able to collaborate on research projects needed for his dissertation, for which Defendant Weems served as his advisor.

44.     However, on or around October 11, 2023, Defendant Weems informed Mr. Constant that he would not permit him to return to Livermore if Mr. Constant failed to "prove" to him that he had the ability to work.

45.     Defendant Weems further insisted that Mr. Constant could not go back to the internship program because Mr. Constant would "embarrass the lab and him" if he could not work at Defendant Weems' perceived requisite skill level while there due to his disability.

46.     In addition to refusing to sign off on Mr. Constant's internship, in mid-October 2023, Defendant Weems emailed Mr. Constant a revised version of a paper Mr. Constant had been working on, for which Mr. Constant was supposed to be the first named author due to his extensive work on that particular project as the lead researcher.

9

47.     In Defendant Weems' revised copy of Mr. Constant's paper, he included additional graduate students as authors; it was only at this time that Mr. Constant learned Defendant Weems and other graduate students had been working on his project without including or even informing him of their work.

48.     As the fall semester went on, Defendant Weems largely avoided Mr. Constant, displaying a lack of interest in helping him with his educational or career goals.

49.     As part of his PhD program and related research in the lab, Mr. Constant was required to identify and articulate specific research "aims" (i.e. statements reflecting the broad overarching goals of his dissertation).

50.     As his Graduate Research Advisor, Defendant Weems was tasked with helping Mr. Constant work on his research aims.

51.     Mr. Constant reached out to Defendant Weems about his aims on several occasions, requesting feedback on his draft aims.

52.     Defendant Weems did not provide Mr. Constant much, if any, feedback on his aims; instead, Defendant Weems either ignored Mr. Constant or just briefly replied that his aims were "wrong."

53.     On October 27, 2023, Mr. Constant was working on his aims in the office when Defendant Weems approached him and chastised him that he "did not pay him to work on aims."

54.     Despite this comment, Defendant Weems told Mr. Constant to send him his aims for his review. At the same time, Defendant Weems expressed that he believed Mr. Constant was "slow burning the situation" and "ruining his chances" of going back to Livermore, threatening not to sign off on it.

55. On October 30, 2023, Mr. Constant sent draft aims to Defendant Weems, who responded a short time later, stating, without explanation, that Mr. Constant's ideas "would not work."

56. Instead of helping Mr. Constant develop his own original aims (as he was supposed to do for his dissertation), Defendant Weems provided Mr. Constant with a list of his projects that he needed done and asked Mr. Constant to tell him which project he wanted to work on.

57. With the ongoing issues Mr. Constant faced from Defendant Weems, including his refusal to accommodate Mr. Constant's disability, on November 10, 2023, Mr. Constant sent Defendant Weems a copy of the formal accommodations he had obtained through the Office of Accessibility Services.

58. Mr. Constant had initially waited a couple of weeks to reveal that he was granted formal accommodations because he did not want to upset Defendant Weems or risk his ability to continue working in the lab due to anticipated retaliation he feared that he would face in doing so.

59. Unfortunately, Mr. Constant's fear of retaliation proved itself to be true, as Defendant Weems appeared to be agitated about the matter, asking why Mr. Constant would even send him the formal accommodations to begin with because, as Mr. Constant's employer, he "did not have to comply" with any such accommodations granted by the Office of Accessibility Services.

60. Defendant Weems simply refused to implement Mr. Constant's formal accommodations and instead told him to start "working from home" instead of coming into the lab.

61. Mr. Constant explained that remote work was not a viable option because the research and work that he needed to do required being in the lab.

62. Defendant Weems replied that remote work "was not a suggestion" and outright told Mr. Constant he was not permitted in the lab or the office without his approval.

63. Effectively, Defendant Weems barred Mr. Constant from completing his research projects and his dissertation indefinitely until he said otherwise, as well as isolating him from his peers.

64. When Mr. Constant subsequently emailed Defendant Weems – on more than one occasion – to provide him with an expected return date, Defendant Weems did not reply.

65. During the time that Defendant Weems required Mr. Constant to "work from home," Defendant Weems intentionally excluded him from communications about lab-related work, as Mr. Constant later learned.

66. Mr. Constant repeatedly tried to meet with Defendant Weems in the weeks leading up to November 16, 2023, right after he provided him with the formal accommodations letter, but Defendant Weems often did not reply or told Mr. Constant that he was unavailable (without offering alternative meeting times).

67. On November 16, 2023, Defendant Weems emailed Mr. Constant, falsely accusing him of being "too busy to meet with him."

68. Defendant Weems then told Mr. Constant that he "went ahead and made plans for" him, stating that: (1) Mr. Constant would not be going back to Livermore's internship program; (2) Mr. Constant would remain at OU in the Spring and Summer 2024 semesters as a Teaching Assistant (instead of his appointment as a Graduate Research Assistant); (3) Mr. Constant would use the Spring 2024 semester to complete any outstanding manuscripts; and (4) Mr. Constant would complete his presentation to become a PhD candidate in the program during the Spring 2024 semester and defend his dissertation at the end of July 2024, graduating by Fall 2024.

69.     Defendant Weems also emailed Livermore's staff and informed them that Mr. Constant was "not making the progress he wanted him to," so he would not be sending Mr. Constant back to participate in their internship program.

70.     In that same email, Defendant Weems told Livermore that Mr. Constant was not going to meet a December 15, 2023 deadline for his program, but failed to mention that Mr. Constant had received an extension through January 2024 to complete everything needed due to his disability.

71.     Because Defendant Weems barred Mr. Constant from working in the lab and the student office, Mr. Constant was forced to suspend work on his graduate research paper in November 2023.

72.     With this forced suspension of work, discriminatory and retaliatory banishment from the lab and office, Defendant Weems' failure to discuss or provide direction on the project, erroneous changes made to Mr. Constant's research paper by other students, Defendant Weems' discriminatory treatment of Mr. Constant due to his disability, and his refusal to accommodate him, Mr. Constant was unable to successfully complete the paper.

73.     On November 17, 2023, Mr. Constant reported Defendant Weems' discriminatory and retaliatory treatment of him due to his disability and need for accommodations to OU's Office of Equity and Civil Rights Compliance ("ECRC"), providing details and examples of the same.

74.     Around this same time, Mr. Constant reported the same issues with Defendant Weems to Dr. Greg Kremer, the Department Chair of the Mechanical Engineering Department (Defendant Weems' direct supervisor).

75.     However, on November 21, 2023, Dr. Kremer emailed his "advice" on handling Defendant Weems' discriminatory and retaliatory conduct, which was "to limit [his] interactions

with Defendant Weems to written email correspondence and no in-person interactions for the remainder of the semester."

76.     Dr. Kremer's advice was not reasonable or practical given the important role Defendant Weems played as Mr. Constant's Graduate Research Advisor and joint employer in his ability to obtain his PhD, as well as future success beyond his graduate program.

77.     Around late December 2023 or early January 2024, Mr. Constant requested that OU sign off on his return to Livermore's internship program so that he could remain an active student in his graduate program at OU and provide him with further reasonable accommodations that would allow him to continue successfully in his employment and PhD program.

78.     On or around December 15, 2023, Mr. Constant reached out to Dean Patrick Fox, the Dean of the College of Engineering and Technology, and advised him of Defendant Weems' refusal to accommodate his disability and discriminatory treatment based on his disability, including Defendant Weems' disparaging remarks about his abilities and disability-related symptoms, his refusal to sign off on Mr. Constant's internship program at Livermore, his removal of him from projects, the lab, and the office, and his lack of response following inquiries related to his graduate research and employment.

79.     Dean Fox replied stating that he could not sign off on Mr. Constant's internship and was unable to identify someone who could do so; instead, the University Registrar only gave Mr. Constant a letter confirming that he was an active student at OU.

80.     Dean Fox also encouraged Mr. Constant to seek out a new advisor and suggested a couple of potential advisors who may have fit Mr. Constant's research interests; Mr. Constant thanked him for this information and said he would look into switching advisors.

81. Unfortunately, as Mr. Constant explained to Dean Fox, Defendant Weems' research had a specific focus that other professors did not, meaning that, if Mr. Constant switched advisors, he would essentially have to start over on a new research project outside of his chosen field.

82. Because of Defendant Weems' harassment, discrimination, and retaliation against Mr. Constant, however, he had no choice but to seek out a new advisor.

83. With OU and Defendant Weems' refusal to sign off on Mr. Constant's internship at Livermore, and in light of a start date approaching in two weeks, Mr. Constant accepted the fact that he would only be able to return to Livermore as a "non-student," meaning that Mr. Constant would not receive any credit towards his graduate degree for the work he would be performing that semester.

84. Despite Defendant Weems' failure to sign off on Mr. Constant's return to Livermore, thereby limiting his opportunities to work on certain research projects, including those he had been working on under Defendant Weems' supervision, with Dean Fox's encouragement, Mr. Constant still moved forward with the internship because of the educational and professional opportunities it offered him.

85. Mr. Constant remained an active student at OU by enrolling in one course with Dr. Brian Wisner as his advisor (even though Dr. Wisner's research, while similar, was materially different from Mr. Constant's research projects with Defendant Weems and Livermore).

86. Around this same time, on January 16, 2024, the ECRC issued a "formal notice of investigation" to both Mr. Constant and Defendant Weems regarding his complaints about Defendant Weems' discriminatory and retaliatory conduct.

87. A couple of days prior to the notice, Mr. Constant had met with the ECRC and made it clear that he intended to continue as a graduate student and Graduate Research Assistant upon his return from Livermore.

88. However, around the end of February 2024, upon inquiring, Mr. Constant learned that his Graduate Research Assistant appointment had been canceled by OU.

89. Mr. Constant did not request any such cancellation and later learned the decision had been made on or around January 16, 2024 pursuant to a backdated notice that he had not been issued.

90. Mr. Constant reached out to Dean Fox and other faculty members, including Defendant Weems, Dr. Kevin Lee, Dr. Kremer, and Dr. Doug Goetz, and informed them of his intent to complete his internship at Livermore, stay enrolled at OU as an active student, and to return to OU in the Fall 2024 semester, where he would be following the same academic plan as the prior semester, and his interest in remaining employed as a Graduate Research Assistant.

91. Within three days of the notice of investigation, however, on January 19, 2024, Defendant Weems voluntarily resigned from his position with OU; Dean Fox subsequently notified Mr. Constant of this development.

92. Because of Defendant Weems' resignation, OU closed its investigation into Mr. Constant's complaints.

93. With Defendant Weems' resignation, Weems Lab would no longer be operating under the University; however, this effective "closure" or pause on work in the lab and/or its research projects was totally unrelated to any accommodation required for Mr. Constant or to his job performance.

16

94.     On January 22, 2024, Mr. Constant started his internship at Livermore, this time in a capacity akin to a "free agent" – i.e. his research that he had been working on through Defendant Weems could no longer serve as his research project in the same capacity it had before; instead, Mr. Constant worked on distinct research projects through Livermore and lost support from Defendant Weems in his capacity as his Graduate Research Advisor, which negatively impacted Mr. Constant's ability to apply his research towards his dissertation needed to obtain his PhD.

95.     On February 12, 2024, Mr. Constant emailed Dean Fox to advise him on what reasonable accommodations might be available to him through OU that would allow him to continue in his PhD program, noting that he had several concerns to discuss with him before Mr. Constant could decide next steps in his educational plan after completion of his internship.

96.     Mr. Constant expressed that he wanted to finish his PhD at OU, requested that Dean Fox let him know what options were available to him to complete his PhD program given Defendant Weems' resignation, and asked that, if that was not possible, whether he had enough credits to earn a master's degree instead.

97.     Mr. Constant also reiterated that he was seeking assistance in identifying a research advisor whose work was more closely aligned with the work he had been doing for Defendant Weems and at Livermore.

98.     Dean Fox replied the next day and informed Mr. Constant that he had met all of the course requirements for a master's degree in biomedical engineering and would be able to obtain the degree upon defending his thesis.

99.     While completing his internship at Livermore, on February 16, 2024, Mr. Constant received an "overpayment" notice from OU regarding monies he received as part of his graduate appointment.

100.     Mr. Constant also, without notice, had been assigned a failing grade by Dr. Wisner in the one credit hour course he was enrolled in through OU, which caused his student loans to erroneously go into repayment.

101.     Several weeks later, once he learned of the failing grade, Mr. Constant successfully appealed and received a "pass" for the course.

102.     While Mr. Constant's internship at Livermore enabled him to continue research in his specific field, that same opportunity with OU was no longer possible as Defendant Weems had abandoned Mr. Constant in his capacity as his Graduate Research Advisor.

103.     Mr. Constant, prior to Defendant Weems' discriminatory and retaliatory conduct, had been on track to graduate with his PhD in 2025 or 2026; however, because of those issues and lack of reasonable accommodations, Mr. Constant would have to prolong his studies for at least one more year to be able to graduate with his PhD.

104.     Mr. Constant ultimately applied his course requirements achieved through OU towards his master's degree, successfully defended his master's thesis in July 2024, and graduated with his master's degree in the Fall of 2024.

105.     Because of the harassment, discrimination, and retaliation against Mr. Constant, in addition to his termination from his Graduate Research Assistant position, he was unable to graduate with his PhD and, instead, had to enroll in another PhD program at another university, where he essentially restarted his efforts to obtain his PhD due to the fact that only a few of his credits earned through OU for his PhD could be applied towards his new program.

106.     Meanwhile, even though Defendant Weems had resigned as a professor, at least three other, non-disabled PhD candidates that had been in Mr. Constant's program at the same time as him were able to continue research that Mr. Constant had been working on through The Weems

Lab (i.e. Defendant Resilient Medical) and obtain a PhD from OU in a timely manner; Defendant Weems also appeared in person as a member of one student's PhD committee at his defense of his dissertation.

107.    Additionally, because of Defendant Weems' unlawful actions, any potential opportunity for Mr. Constant to remain in the employ of Defendant Resilient Medical Corp. (as previously contemplated by Dr. Weems) no longer existed.

108.    At all times material to this Complaint, OU and Weems Lab jointly employed Mr. Constant, by, among other factors, sharing control over the essential terms and conditions of his employment, subjecting him to their respective employment-related policies, and retaining authority to hire and terminate him.

109.    At all times material to this Complaint, upon information and belief, Defendant Weems and/or companies owned and operated by him (such as Defendant Resilient Medical Corp. *dba* The Weems Lab) operated under an agreement with OU that required him and/or his companies to comply with OU's anti-discrimination and anti-retaliation policies, and, like OU, received federal financial support for their activities and were subject to anti-discrimination and anti-retaliation conditions imposed by such support.

110.    Defendants and OU unlawfully discriminated and retaliated against Mr. Constant because of his disability and request for reasonable accommodations, deliberately and/or recklessly disregarding a strong likelihood that their actions described herein, including his termination, their failure to accommodate, and their denial of fair educational and employment opportunities to him, would violate his federally protected rights under the Rehabilitation Act.

111.    As a direct and proximate result of Defendants' denial of fair educational and employment opportunities based on his disability, failure to accommodate his disability despite

the lack of undue hardship, and his resulting termination, Mr. Constant has suffered, and continues to suffer, from serious emotional distress.

112.    Despite exercising reasonable diligence in pursuing employment comparable to his position with Defendants, Mr. Constant has incurred economic damages due to Defendants' and OU's unlawful actions.

113.    Mr. Constant has suffered from, and continues to suffer from, embarrassment, humiliation, and other emotional distress due to Defendants' and OU's unlawful actions.

114.    In failing to accommodate Mr. Constant's disability (where no undue hardship existed) or meaningfully engage in an interactive process with him regarding accommodations and, instead, terminating him based on his disability and protected activity in requesting reasonable accommodation for his disability, Defendants, alongside OU, acted willfully and with reckless or conscious disregard to his right to remain free from discrimination and retaliation, even though that conduct had a great probability of causing him economic and other hardship, and emotional distress, and did cause such harm.

## V.    <u>Causes of Action</u>

### A.    <u>Violations of the Ohio Laws Against Discrimination: Disability Discrimination; Failure to Accommodate; Retaliation; and Aiding and Abetting under 4112.02(J)</u>

115.    Plaintiff incorporates the foregoing allegations as if fully stated herein.

116.    By altering the material terms and conditions of his employment, failing to meaningfully engage in the interactive process, denying reasonable accommodation for his disability, and eventually terminating Plaintiff's employment because of his disability and/or his protected activity in requesting reasonable accommodation for his disability, acting in reckless disregard for his rights, Defendants have willfully violated the Ohio Laws Against Discrimination.

117.    In addition, due to his role in the aforementioned discriminatory and retaliatory actions, Defendant Weems, acting with reckless disregard for Plaintiff's rights, aided, abetted, incited, compelled, and/or coerced others, such as OU, into committing unlawful discriminatory practices under R.C. 4112; obstructed and/or prevented others, such as OU, from complying with R.C. 4112; and/or attempted to indirectly or directly commit unlawful discriminatory practices under R.C. 4112, thereby violating R.C. 4112(J) in his individual capacity.

**B.**     **Violations of Section 504 of the Rehabilitation Act of 1973: Disability Discrimination; Failure to Accommodate; Failure to Provide Equal Access to Programs, Services, and Employment; and Retaliation**

118.     Plaintiff incorporates the foregoing allegations as if fully stated herein.

119.    Given Defendants' status as recipients of federal financing assistance, by denying Plaintiff equal access to educational programs, services, and employment, as well as altering the material terms and conditions of his employment, failing to meaningfully engage in the interactive process, denying reasonable accommodation for his disability, and eventually terminating Plaintiff's employment because of his disability and/or his protected activity in requesting reasonable accommodation for his disability, acting in reckless disregard for his rights, Defendants have willfully violated the Rehabilitation Act.

**C.**     **Violations of the Americans with Disabilities Act: Disability Discrimination; Failure to Accommodate; and Retaliation**

120.    Plaintiff incorporates the foregoing allegations as if fully stated herein.

121.    By altering the material terms and conditions of his employment, failing to meaningfully engage in the interactive process, denying reasonable accommodation for his disability, and eventually terminating Plaintiff's employment because of his disability and/or his protected activity in requesting reasonable accommodation for his disability, acting in reckless disregard for his rights, Defendants have willfully violated the Americans with Disabilities Act.

**VI .    Prayer for Relief**

WHEREFORE, Plaintiff is entitled to and prays for the following relief:

A. a declaration that Defendants have violated the ADA, Section 504 of the Rehabilitation Act, and/or OLAD;

B. equitable relief of expungement of his personnel file and reinstatement;

C. economic, punitive, and compensatory damages in an amount exceeding $25,000.00;

D. pre-judgment and post-judgment interest;

E. costs and attorneys' fees; and

F. such other relief as the Court deems fair and equitable.

Respectfully submitted,

By: */s/ Madeline J. Rettig*
Madeline J. Rettig (0098816)
(*mrettig@marshallforman.com*)
John S. Marshall (0015160)
(*jmarshall@marshallforman.com*)
Edward R. Forman (0076651)
(*eforman@marshallforman.com*)
Samuel M. Schlein (0092194)
(*sschlein@marshallforman.com*)
Helen M. Robinson (0097070)
(*hrobinson@marshallforman.com*)
MARSHALL FORMAN & SCHLEIN, LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

By: */s/ Madeline J. Rettig*
Madeline J. Rettig (0098816)

22

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Pittsburgh Area Office**
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA 15222
(412) 588-6905
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 09/03/2025

**To:** Eric Constant
324 E. 4140 St., Apt 191
Salt Lake City, UT 84107
Charge No: 533-2025-03000

EEOC Representative and email:    Philadelphia, Legal Unit
(267) 589-9700

---

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 533-2025-03000.

On behalf of the Commission,

Digitally Signed By: Deborah Kane
09/03/2025

Deborah Kane
Area Office Director

**cc:**

Please retain this Notice for your records.

FILED
Athens County,Ohio
11/25/2025 03:34 PM
Candy Russell Clerk
CaseNumber:25CI0367
Judge:MCCARTHY, GEORGE P

**Athens County Court of Common Pleas**
**1 South Court Street**
**Athens, Ohio  45701**

Case Number:  **25CI0367**

**Submission Date of Filing:**  **November 25, 2025**

**Case Title:**  **25CI0367 CONSTANT**, ERIC vs. WEEMS, ANDREW C.

**Document Submitted:**  **CIVIL COMPLAINT** FILED

11/25/2025 03:00 PM

Attorney: RETTIG, MADDIE J Receipt: 179374 Date: 11/25/2025

**Filed by:**  **Madeline Rettig**

**Filed on behalf of:**  **ERIC CONSTANT**

## Certificate of Service

I hereby certify that a complete copy of the foregoing instrument has been served upon the following counsel of record by electronic filing using the Athens County Court of Common Pleas electronic filing system, on this the 25 day of November, 2025

**MADDIE J** RETTIG, MRETTIG@MARSHALLFORMAN.COM

The following were served by Attorney (via eMail):
**ERIC CONSTANT**

It is the responsibility of the filer to provide to Athens County Clerk of Court Certification of Service upon the following parties and/or attorney(s) representing the following parties:

**ANDREW C. WEEMS**
**340 W. STATE ST., ATHENS, OH 45701**

**RESILIENT MEDICAL CORP.**
**340 W. STATE ST., ATHENS, OH 45701**

# U.S. Postal Service®
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

9414 7266 9904 2230 2397 29

| | | |
|---|---|---|
| Certified Mail Fee | $ | |
| Return Receipt (Hardcopy) | $ | **Postmark Here** |
| Return Receipt (Electronic) | $ | |
| Certified Mail Restricted Delivery | $ | |
| Postage | $ | |
| Total Postage and Fees | $ | |

Sent to: ANDREW C WEEMS
340 W. STATE ST.
ATHENS OH 45701

## Reference Information

25CI0367
1000005629

PS Form 3800, Facsimile, July 2015

# U.S. Postal Service®
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

9414 7266 9904 2230 2397 36

| | |
|---|---|
| Certified Mail Fee | $ |
| Return Receipt (Hardcopy) | $ |
| Return Receipt (Electronic) | $ |
| Certified Mail Restricted Delivery | $ |
| Postage | $ |
| Total Postage and Fees | $ |

Postmark
Here

Sent to: RESILIENT MEDICAL CORP.
340 W. STATE ST.
ATHENS OH 45701

## Reference Information

25CI0367
1000005630

COURT OF COMMON PLEAS, ATHENS COUNTY, OHIO

# SUMMONS

RULE 4 1970 OHIO RULES OF CIVIL PROCEDURE

CONSTANT, ERIC
     PLAINTIFF

vs.                                      CASE NO. **25CI0367**

ANDREW C WEEMS
     DEFENDANT

TO:   **ANDREW C WEEMS**
       **340 W. STATE ST.**
       **ATHENS OH  45701**

YOU ARE HEREBY SUMMONED THAT A COMPLAINT (A COPY OF WHICH IS ATTACHED AND MADE A PART HEREOF) HAS BEEN FILED AGAINST YOU IN THIS COURT BY THE PLAINTIFF(S) NAMED HEREIN.

YOU ARE REQUIRED TO SERVE UPON THE PLAINTIFF'S ATTORNEY OR UPON THE PLAINTIFF IF HE HAS NO ATTORNEY OF RECORD, A COPY OF YOUR ANSWER TO THE COMPLAINT **WITHIN 28 DAYS** AFTER SERVICE OF THIS SUMMONS UPON YOU, EXCLUSIVE OF THE DAY OF SERVICE. SAID ANSWER **MUST** BE FILED WITH THIS COURT WITHIN THREE DAYS AFTER SERVICE UPON PLAINTIFF'S ATTORNEY.

THE NAME AND ADDRESS OF THE PLAINTIFF'S ATTORNEY IS AS FOLLOWS:

MADDIE J RETTIG
250 CIVIC CENTER DRIVE
SUITE 480
COLUMBUS OH 43215

IF YOU FAIL TO APPEAR AND DEFEND, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

CANDY RUSSELL, CLERK OF COURTS
1 S. COURT STREET 4TH FLOOR
ATHENS, OH 45701

By: DEPUTY

*Brenda Crattral*

November 25, 2025

Summons_cv

COURT OF COMMON PLEAS, ATHENS COUNTY, OHIO

# SUMMONS

RULE 4 1970 OHIO RULES OF CIVIL PROCEDURE

CONSTANT, ERIC
     PLAINTIFF

vs.                                          CASE NO. **25CI0367**

ANDREW C WEEMS
     DEFENDANT

TO:    **RESILIENT MEDICAL CORP.**
        **340 W. STATE ST.**
        **ATHENS OH  45701**

YOU ARE HEREBY SUMMONED THAT A COMPLAINT (A COPY OF WHICH IS ATTACHED AND MADE A PART HEREOF) HAS BEEN FILED AGAINST YOU IN THIS COURT BY THE PLAINTIFF(S) NAMED HEREIN.

YOU ARE REQUIRED TO SERVE UPON THE PLAINTIFF'S ATTORNEY OR UPON THE PLAINTIFF IF HE HAS NO ATTORNEY OF RECORD, A COPY OF YOUR ANSWER TO THE COMPLAINT **WITHIN 28 DAYS** AFTER SERVICE OF THIS SUMMONS UPON YOU, EXCLUSIVE OF THE DAY OF SERVICE. SAID ANSWER **MUST** BE FILED WITH THIS COURT WITHIN THREE DAYS AFTER SERVICE UPON PLAINTIFF'S ATTORNEY.

THE NAME AND ADDRESS OF THE PLAINTIFF'S ATTORNEY IS AS FOLLOWS:

MADDIE J RETTIG
250 CIVIC CENTER DRIVE
SUITE 480
COLUMBUS OH 43215

IF YOU FAIL TO APPEAR AND DEFEND, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

CANDY RUSSELL, CLERK OF COURTS
1 S. COURT STREET 4TH FLOOR
ATHENS, OH 45701

By: DEPUTY

*Brenda Crabtree*

November 25, 2025

Return Receipt (Form 3811) Barcode

9590 9266 9904 2230 2397 39

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X ☑ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Audrey Jeffers    12-1-25

D. Is delivery address different from item 1?    ☐ Yes
If YES, enter delivery address below:    ☐ No

FILED

ATHENS COUNTY, OHIO

DEC 0 2 2025

Candy S. Russell, CLERK
OF COMMON PLEAS COURT

1. Article Addressed to:

RESILIENT MEDICAL CORP.
340 W. STATE ST.
ATHENS OH 45701

25CI0367

3. Service Type:
☒ Certified Mail

Reference Information

25CI0367
1000005630

2. Certified Mail (Form 3800) Article Number

9414 7266 9904 2230 2397 36

PS Form 3811, Facsimile, July 2015    Domestic Return Rec

**USPS TRACKING #**

9590 9266 9904 2230 2397 39

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States**
**Postal Service®**

● Sender: Please print your name, address and ZIP+4® below ●



**CANDY RUSSELL**
**ATHENS COUNTY CLERK OF COURTS**
**1 SOUTH COURT STREET 4TH FLR**
**ATHENS OH 45701-2824**

Return Receipt (Form 3811) Barcode

9590 9266 9904 2230 2397 22

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____ ☑ Agent
                                ☐ Addressee

B. Received by (Printed Name)          C. Date of Delivery
Audrey Jeffers                          12-1-25

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:          ☑ No

ATHENS COUNTY, OHIO

DEC 0 2 2025

Candy S. Russell, CLERK
COMMON PLEAS COURT

. Article Addressed to:

ANDREW C WEEMS
340 W. STATE ST.
ATHENS OH 45701

25CI0367

3. Service Type
☒ Certified Mail

Reference Information

25CI0367
1000005629

Certified Mail (Form 3800) Article Number

4 7266 9904 2230 2397 29

Facsimile July 2015                    Domestic Return Receipt

**USPS TRACKING #**

9590 9266 9904 2230 2397 22

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States**
**Postal Service®**

● Sender: Please print your name, address and ZIP+4® below ●



**CANDY RUSSELL**
**ATHENS COUNTY CLERK OF COURTS**
**1 SOUTH COURT STREET 4TH FLR**
**ATHENS OH 45701-2824**